UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CARL A. WESCOTT,

Plaintiff,

v.

ROBERT J. BLOCK, et al.,

Defendants.

Case No. 22-cv-00543-DMR

**ORDER GRANTING IFP APPLICATION AND REPORT & RECOMMENDATION SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(E)**

Plaintiff filed a complaint and an application for leave to proceed *in forma pauperis* ("IFP"). [Docket Nos. 1, 3.] Having considered Plaintiff's papers, the court grants the IFP application and finds that the complaint fails to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e). As Plaintiff declined jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c), (Docket No. 5), the court issues this Report and Recommendation and orders reassignment of this case to a district judge, with the recommendation that Plaintiff's complaint be dismissed with leave to file a First Amended Complaint that addresses the deficiencies identified in this screening order by May 18, 2022.

## I. BACKGROUND

Plaintiff is a resident of Scottsdale, Arizona. Compl. ¶ 1. Defendants Robert J. Block, Monette Stephens, Terry Szucsko, Milla Lvovich, and the law firm Lvovich & Szucsko, P.C. (collectively, "Defendants") are residents of San Francisco, California, and Chicago, Illinois. Plaintiff alleges that Defendants engaged in a conspiracy to steal information he provided to his attorneys during his divorce.[1] *Id.* ¶¶ 2-6. Specifically, in 2014, Plaintiff filed for divorce in San

[1] Plaintiff has filed several lawsuits in this district, including a few against Stephens and Szucsko related to his divorce. *See, e.g., Wescott v. Matusow*, No. 22-cv-00070-JCS; *Wescott v. Beresford*

Francisco Superior Court against his wife, Defendant Monette Stephens. *Id.* ¶ 15. In 2017, the family court issued an order pertaining to custody and financial matters. *Id.* ¶ 17. Plaintiff decided to appeal and hired non-party Robert D. Shearer, a Chicago-based attorney who is now deceased, to review the family court decision. *Id.* ¶¶18-19. Block, a disbarred Illinois attorney, worked as a paralegal in Shearer's office. *Id.* ¶ 20.

Plaintiff alleges that Stephens and her divorce attorney Terry Szucsko concocted a scheme to bribe Block to steal privileged and confidential information held by Shearer's law office. Compl. ¶¶ 21-23. Plaintiff says that Block had signed a written confidentiality agreement and "non-circumvent." *Id.* ¶ 29. Plaintiff does not describe the "non-circumvent," or the information that was subject to the confidentiality agreement, or whether the confidential information pertained to him. *See generally id.* ¶¶ 22-52.

According to Plaintiff, Stephens allegedly started to make a series of monthly payments to Block, totaling over $1,000, plus other unspecified non-cash "inducements," to acquire the confidential information. *Id.* ¶¶ 24-26. In 2018, Plaintiff discovered that Block had contacted Stephens. *Id.* ¶ 30. Block promised not to do so again, and the parties signed an agreement in which Block agreed to pay $10,000 in liquidated damages for every contact made with Plaintiff's "legal adversaries." *Id.* ¶ 31. Plaintiff notified Szucsko of this agreement. *Id.* ¶ 33.

Plaintiff then started consulting for Salveo Capital, a venture capital fund. Compl. ¶ 34. Plaintiff avers that just before he was due to help Salveo raise more capital and earn $255,000, Szucsko and Stephens secured information about the fund from Block that was held in Shearer's law office. On or around February 19, 2019, Szucsko and Stephens allegedly filed a Petition for

---

*Corp.*, No. 22-cv-00067-JSC; *Wescott v. Daniel*, No. 21-10011-JCS; *Wescott v. SparkLabs IoT Accelerator Fund, L.P.*, No. 21-cv-09200-AGT; *Wescott v. Crowe*, No. 20-cv-6456-JD; *Wescott v. Smith*, No. 19-cv-2084-JST; *Wescott v. Upshaw*, No. 19-cv-1640-WHO; *Wescott v. Stephens*, No. 18-7407-HSG; *Wescott v. Martin*, No. C18-7104-SBA; *Wescott v. Martin*, No. 18-cv-5842; *Wescott v. Stephens*, No. 18-cv-5009-WHO; *Wescott v. Gila, Inc.*, No. C18-02829-WHA; *Wescott v. Bushnell*, No. 17-cv-7371-RS; *Wescott v. Martin*, No. 17-cv-7330-SBA; *Wescott v. Reisner*, No. 17-cv-06271-SBA; *Wescott v. Stephens*, No. 17-cv-5837-WHO; *Wescott v. Anderson*, No. 17-cv-05676-LB. After reviewing the pleadings in those cases, the court determines that the allegations in this lawsuit are different from those in Plaintiff's previous suits.

United States District Court
Northern District of California

an Assignment Order seeking to levy proceeds from Plaintiff's commercial dealings with Salveo. *Id.* ¶ 37. Plaintiff contends that they intended to deprive him of revenue and interfere with his child support payments, and that they did not take any steps to collect the $255,000 Plaintiff was to earn from Salveo. *Id.* ¶ 39. However, he claims that Szucsko and Stephens misused stolen confidential and privileged information and defrauded the court by not disclosing their "thefts and related crimes." *Id.* ¶ 38.

Plaintiff allegedly possesses evidence of Stephens's payments to Block as well as "dozens of emails" between them, "including Block sending confidential and privileged information (including regarding Salveo) to Stephens in exchange for said kickbacks and commercial bribery." Compl. ¶ 41. Plaintiff also allegedly has emails from Szucsko indicating he is "part of the conspiracy to steal confidential and privileged information" from Plaintiff and Shearer's law firm, including emails in which Szucsko refers to Block. *Id.* ¶ 42. Plaintiff sent two demand letters to Szucsko setting forth his allegations, which are attached to the complaint and to which he received no response. Plaintiff contends that Defendants are "actively plotting to seal and misuse more confidential and privileged information." *Id.* ¶¶ 43-46; *see* Compl. Exs. A-B. Finally, Plaintiff refers to "dozens of issues with these defendants not covered in this legal complaint," including additional steps Stephens and Szucsko took to deprive him of over $3 million from accelerator and venture capital funds, which he asserts will be addressed in future and related complaints. *Id.* ¶ 47-49.

## II. LEGAL STANDARD

A court may allow a plaintiff to prosecute an action in federal court without prepayment of fees or security if the plaintiff submits an affidavit showing that he or she is unable to pay such fees or provide such security. *See* 28 U.S.C. § 1915(a). A court is under a continuing duty, however, to dismiss a case filed without the payment of the filing fee whenever it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). If the court dismisses a case pursuant to 28 U.S.C. § 1915(e)(2)(B), the plaintiff may still file the same complaint by paying the filing fee. This is because the court's

section 1915(e)(2)(B) dismissal is not on the merits, but rather an exercise of the court's discretion under the IFP statute. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

To make the determination under 28 U.S.C. § 1915(e)(2)(B), courts assess whether there is an arguable factual and legal basis for the asserted wrong, "however inartfully pleaded." *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984). Courts have the authority to dismiss complaints founded on "wholly fanciful" factual allegations for lack of subject matter jurisdiction. *Id.* at 1228. A court can also dismiss a complaint where it is based solely on conclusory statements, naked assertions without any factual basis, or allegations that are not plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *see also Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam). Dismissal is proper where "no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78.

Although pro se pleadings are liberally construed and held to a less stringent standard than those drafted by lawyers, *see Erickson*, 551 U.S. at 94, a complaint, or portion thereof, should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007); *see also* Fed. R. Civ. P. 12(b)(6). "[A] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## III. DISCUSSION

Having evaluated Plaintiff's financial affidavit, the court finds that he satisfies the economic eligibility requirement of 28 U.S.C. § 1915(a) and grants his application to proceed IFP. However, the court recommends that Plaintiff's complaint be dismissed for the reasons set forth below.

The complaint alleges that Defendants violated federal and state laws prohibiting misappropriation of trade secrets and unfair debt collection practices, along with numerous tort

United States District Court
Northern District of California

claims. *See* Compl. ¶¶ 53-161.[2] The court concludes that none of Plaintiff's allegations state cognizable claims for relief. Many of the claims are conclusory—that is, they simply restate the applicable legal standard without providing sufficient facts to establish a plausible legal violation.

**A. Claims against Defendants Lvovich & Szucsko and Milla Lvovich**

Plaintiff does not allege any specific facts about Szucsko's firm, Defendant Lvovich & Szucsko, apart from boilerplate allegations of liability under agency theories. *Id.* ¶¶ 11, 14. He also does not allege any facts against Lvovich but suggests that he will issue further complaints and lawsuits about her. *Id.* ¶¶ 14-15.

The court recommends dismissal without prejudice of all claims against Lvovich and Lvovich & Szucsko, P.C., because the complaint does not contain allegations sufficient to suggest that those parties are liable for any alleged conduct. *See* Compl. ¶¶ 8-14.

**B. Misappropriation of Trade Secrets**

Plaintiff alleges that Defendants unlawfully misappropriated trade secrets that relate to Salveo's IPO by conspiring to obtain the confidential information held at Shearer's law office. Compl. ¶¶ 53-68. He brings claims for trade secrets under the federal Defend Trade Secrets Act ("DTSA") and California's Uniform Trade Secrets Act ("UTSA"). *See* 18 U.S.C. 1836 *et seq.*; Cal. Civ. Code § 3426 *et seq.*[3] The court analyzes the two claims together because they are substantially similar. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).

To state a DTSA claim, a plaintiff must allege "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *Inteliclear*, 978 F.3d at 676-58 (citing 18 U.S.C. §

---

[2] The complaint alleges federal question and diversity jurisdiction. Compl. ¶ 7. As discussed below, the court recommends dismissal of the federal claims but concludes that it may exercise diversity jurisdiction because complete diversity exists and, liberally construed, the complaint alleges at least $255,000 in damages. *See* 28 U.S.C § 1332(a).

[3] The complaint refers to a "state" violation of trade secrets in the title of the second claim for relief and in one allegation referencing the definition of trade secrets in California Civil Code section 3426.1. The court liberally construes the claim as arising under that provision. *See* Compl. ¶ 62.

1839(5)); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019) (articulating pleading standard).

"[T]he definition of what may be considered a 'trade secret' is broad." *InteliClear*, 978 F.3d at 657. A trade secret has three elements: "(1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *Id.*; *see* 18 U.S.C. § 1839(3). At the pleadings stage, "[a] plaintiff need not spell out the details of the trade secret, but must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *AlterG*, 388 F. Supp. 3d at 1144 (quotations omitted); *see Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998). The "sufficient particularity" language comes from California Code of Civil Procedure section 2019.210, which "requires the party alleging misappropriation to identify trade secrets with reasonable particularity before conducting discovery." *Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, No. C 20-04808-WHA, 2021 WL 2166880, at *1 (N.D. Cal. May 27, 2021).[4] Under this standard, "[p]laintiffs must 'clearly refer to tangible trade secret material' instead of referring to a 'system which *potentially* qualifies for trade secret protection.' . . . Plaintiffs may not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial." *InteliClear*, 978 F.3d at 658 (quoting *Imax*, 152 F.3d at 1167) (emphasis in original).

Plaintiff's complaint does not describe the trade secrets Defendants allegedly misappropriated, nor does it allege that those trade secrets belong to him. His conclusory allegations merely allude to "nonpublic information" related to an IPO that was "particularly sensitive" and was maintained under confidentiality agreements. Compl. ¶¶ 56-57, 64-65. The complaint does not set forth the subject matter of this information apart from the fact that it

---

[4] "In any action alleging the misappropriation of a trade secret under the [UTSA] . . . before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity[.]" Cal. Civ. Proc. Code § 2019.210. Federal courts have applied section 2019.210 to cases alleging DTSA and UTSA violations. *InteliClear*, 978 F.3d at 658 n.1.

involved financial documents. Instead, Plaintiff uses generic, catchall phrases to assert that the information was protected; he fails to show that the information is not a "matter[] of general knowledge in the trade or of special persons who are skilled in the trade." *AlterG*, 388 F. Supp. 3d at 1144. Accordingly, the court concludes that the complaint fails to plead any protectable trade secrets with reasonable particularity that are owned by Plaintiff and recommends dismissal of the DTSA and Uniform Trade Secrets Act with leave to amend.

**C. Fair Debt Collection Practices Claims**

Plaintiff alleges that Szucsko, Lvovich, and Stephens violated the federal Fair Debt Collection Practices Act ("FDCPA") and California Rosenthal Fair Debt Collection Practices Act by acting as debt collectors attempting to collect consumer debt. Compl. ¶¶ 69-81; *see* 15 U.S.C. § 1692 *et seq.*; Cal. Civ. Code § 1788 *et seq.* Those laws prohibit abusive, unfair, or deceptive practices in consumer debt collection. *See* 15 U.S.C. § 1692(e); Cal. Civ. Code § 1788.1. "Because not all obligations to pay are considered debts under the FDCPA, a threshold issue in a suit brought under the Act is whether or not the dispute involves a 'debt' within the meaning of the statute." *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004); *see* 15 U.S.C. § 1692a(5) (defining debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes"); Cal. Civ. Code § 1788.2(d), (f) (defining "debt" as "money, property, or their equivalent that is due or owing or alleged to be due or owing from a natural person to another person" and "consumer debt" as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. The term 'consumer debt' includes a mortgage debt.").

Plaintiff's vague allegations do not adequately describe the consumer debt that Defendants allegedly attempted to collect. Likewise, Plaintiff's does not explain his naked assertion that Defendants were acting as debt collectors. *See* 15 U.S.C. § 1692a(6) (defining "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another"); Cal. Civ. Code § 1788.2(c) (defining "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection.").

Plaintiff's allegations also appear to run afoul of the one-year statute of limitations contained in both statutes. *See* 15 U.S.C. § 1692k(d); Cal. Civ. Code § 1788.30(f). Defendants' activities apparently took place in 2018 and 2019; Plaintiff does not allege any FDCPA or Rosenthal Act violations taking place in the year predating his complaint. *See* Compl. ¶¶ 22, 30, 37-38. Accordingly, the court recommends dismissal of these claims with leave to amend to address these deficiencies.

**D. Tort Claims**

Plaintiff also pleads a number of tort claims. Given that the court recommends dismissal of the federal law claims, jurisdiction over the state tort claims is proper solely on the basis of diversity jurisdiction and not supplemental jurisdiction.

**1. Intrusion Upon Seclusion**

"To state a claim for intrusion upon seclusion, a plaintiff must allege '(1) intrusion into a private place, conversation or matter (2) in a manner highly offensive to a reasonable person.'" *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 829 (N.D. Cal. 2020) (quoting *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998)). "As to the first element, the plaintiff must have had an 'objectively reasonable expectation of seclusion or solitude in the place, conversation or data source.'" *Id.* (quoting *Shulman*, 18 Cal. 4th at 232). "[T]he plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 232 (1998). Legally protected privacy interests include "include conducting personal activities without observation, intrusion, or interference, as determined by established social norms derived from such sources as the common law and statutory enactment." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). "Whether a legally recognized privacy interest is present in a given case is a

question of law to be decided by the court." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994).

"The second common law element essentially involves a policy determination as to whether the alleged intrusion is 'highly offensive' under the particular circumstances." *In re Google Assistant*, 457 F. Supp. 3d at 829 (quoting *Hernandez*, 47 Cal. 4th at 287 (2009)). "Relevant factors include the degree and setting of the intrusion, and the intruder's motives and objectives." *Id.* (quoting *Hernandez*, 47 Cal. 4th at 287). This is a "fact-intensive inquiry" that "cannot be conducted at the motion to dismiss stage where, as here, there are open factual questions regarding 'the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive.'" *Id.* at 830 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020)).

Plaintiff alleges that he had a reasonable expectation that his communications with Shearer and Block would remain confidential due to the contract between them and the standard duty of lawyer confidentiality. Compl. ¶¶ 83-84. The attorney-client privilege and attorney duty of confidentiality may give rise to a client's legally protected privacy interest related to communications with their attorney or information the client provides. *See* Cal. Bus. & Profs. Code § 6068(e)(1); Cal. Evid. Code § 954; *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1146 (1999); *cf. Shulman*, 18 Cal. 4th at 234 ("A patient's conversation with a provider of medical care . . . carries a traditional and legally well-established expectation of privacy."). However, Plaintiff does not explain what information Shearer or Block allegedly disclosed. Plaintiff refers only in a conclusory fashion to "confidential and privileged information from the law offices of Shearer," to matters related to Salveo, and to other "communications." *See* Compl. ¶¶ 25, 36, 38, 41-42, 48, 83-85. Absent any facts about the nature of Plaintiff's communications with his lawyers or the materials they allegedly disclosed, the court cannot conclude that Plaintiff had a reasonable expectation of privacy in that information. Accordingly, the court recommends dismissal of this claim with leave to amend.

United States District Court
Northern District of California

**2. Intentional Interference with a Contract**

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *AlterG*, 388 F. Supp. 3d at 1149 (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

Plaintiff alleges that Defendants interfered with a contract that he had signed with Salveo, which prevented Salveo from performing under the contract. Compl. ¶¶ 93-96. Plaintiff fails to describe the nature of this contractual relationship, the role he performed, and how Defendants' alleged actions forestalled Salveo's performance. He also does not allege how Defendants intended to disrupt that relationship. Plaintiff simply claims that he "raised capital for Salveo" but that Stephens and Szucsko attempted to deprive him of funds he supposedly anticipated as remuneration. *See* Compl. ¶¶ 34, 37-39. These barebones allegations are insufficient, and therefore the court recommends dismissal of this claim with leave to amend.

**3. Intentional and Negligent Interference with Prospective Economic Advantage**

"The elements of a claim for intentional interference with prospective economic advantage are: '(1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant.'" *AlterG*, 388 F. Supp. 3d at 1151 (quoting *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985)). Similarly, to establish negligent interference with prospective economic relations, plaintiff must plead "(1) the existence of a valid economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge (actual or construed) of (a) the relationship and (b) that the relationship would be disrupted if the defendant failed to act with

reasonable care; (3) the defendant's failure to act with reasonable care; (4) actual disruption of the relationship; and (5) resulting economic harm." *Logistick, Inc. v. AB Airbags, Inc.*, 543 F. Supp. 3d 881, 885 (S.D. Cal. 2021).

"'The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective.'" *AlterG*, 388 F. Supp. 3d at 1151 (quoting *Pac. Gas*, 50 Cal. 3d at 1126). "Nevertheless, courts have made clear that '[t]he law precludes recovery for overly speculative expectancies by initially requiring proof' that it is 'reasonably probable that the prospective economic advantage would have been realized but for defendant's interference.'" *Id.* (quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996) (alterations in original)).

Here, Plaintiff fails to plausibly allege any facts that Defendants intended to disrupt his contract with Salveo or that they acted negligently with respect to that relationship. Furthermore, Plaintiff does not substantiate his assertion that the contract with Salveo would have resulted in payment of $255,000 for his unexplained work but for Defendants' interference. Accordingly, the court recommends dismissal of these claims with leave to amend.

**4. Abuse of Process**

To allege abuse of process, "a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011) (quoting *Booker v. Rountree*, 155 Cal. App. 4th 1366, 1372 (2007)). "'Process,' as used in the tort of 'abuse of process,' has never been limited to the strict sense of the term, but instead has been interpreted broadly to encompass the entire range of 'procedures' incident to litigation." *Id.* (quoting *Booker*, 155 Cal. App. 4th at 1372). "The essence of the tort is misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006). However, "[m]erely obtaining or seeking process is not enough; there must be subsequent abuse, by a misuse of the judicial process for a purpose other than that which it was intended to

United States District Court
Northern District of California

serve. The gist of the tort is the improper use of the process *after it is issued*." *Adams v. Super. Ct.*, 2 Cal. App. 4th 521, 530-31 (1992) (emphasis in original).

Plaintiff alleges that Defendants abused a judicial process by filing a Petition for an Assignment Order in the family court to deprive him of money Salveo owed him and to interfere with his child support payments, without ever intending to collect that money from Salveo. Compl. ¶¶ 37-40; 122-26. Plaintiff does not allege any facts indicating that the family court issued such an order, nor does he explain the implications of that order to his divorce dispute or his child support payments. Plaintiff only mentions in passing for the purposes of his other claims that "Defendants engaged in wrongful conduct by . . . maliciously obtaining the assignment claim." Compl. ¶ 109; *see also id.* ¶ 150. This cursory reference to a judicial order without further elaboration is not enough to show that Defendants abused a legal process in the family court. *See Adams*, 2 Cal. App. 4th at 530-31 (motion that "did not result in the issuance of any process" and "produced no act of judicial authority, no writ or order . . . falls short of the tort of abuse of process). Accordingly, the court recommends dismissal of this claim with leave to amend.

**5. Fraudulent Concealment**

"Under California law, the elements of a cause of action for fraudulent concealment are: "(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage." *Johnson*, 653 F.3d at 1011-12 (9th Cir. 2011) (quotations omitted).

"[A]llegations of fraudulent concealment must be pled with particularity." *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015) (citing *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988); *see* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Plaintiffs "must allege specific factual allegations of fraudulent concealment to survive a motion to dismiss." *Id.* "Conclusory statements are not enough." *Conmar*, 858 F.2d at 502.

Plaintiff alleges that Defendants fraudulently concealed Block's offer to disclose Plaintiff's confidential information in exchange for kickbacks and bribes. Compl. ¶¶ 133-38, 145-149. His conclusory contentions are insufficient to meet the heightened pleading standard in Federal Rule of Civil Procedure 9(b), which "requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). As noted above, Plaintiff does not describe the nature of supposed bargain between Block, Stephens, and Szucksko apart from generic allegations of a scheme contrived in 2018 to disclose his confidential information. *See* Compl. ¶ 22. Plaintiff does not describe the information that was disclosed or how he came to be aware of the supposed bargain. He alludes to possessing emails that evidence this scheme, but the complaint does not contain any allegations about the contents of those emails. The complaint therefore fails to plausibly allege fraudulent concealment with particularity. Accordingly, the court recommends dismissal of these claims with leave to amend.

**6. Aiding and Abetting Breach of Fiduciary Duty**

To state a claim for aiding and abetting a breach of fiduciary duty, the plaintiff must allege: "(1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014). "To analyze the sufficiency of [Plaintiff's] claim for aiding and abetting breach of fiduciary duty, we must first identify precisely the breach of fiduciary duty for which [Plaintiff] seek[s] to hold [Defendants] liable." *Id*. "An attorney's duty to the client is 'governed by the Rules of Professional Conduct, and those rules, together with statutes and general principles relating to other fiduciary relationships, help define the duty component of the fiduciary duty which an attorney owes to his client.'" *Knight v. Aqui*, 966 F. Supp. 2d 989, 996 (N.D. Cal. 2013) (*Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,* 96 Cal. App. 4th 1017, 1032 (2002)).

"California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially

United States District Court
Northern District of California

assisted." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005). "Generally, courts have found pleadings sufficient if they allege generally that defendants had actual knowledge of a specific primary violation." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1120 (C.D. Cal. 2003); *Casey*, 127 Cal. App. 4th at 1148.

Plaintiff alleges that Shearer and Block owed him fiduciary duties,[5] and that Defendants aided and abetted a breach of those fiduciary duties to him by knowingly encouraging, assisting and inducing them to disclosing his confidential information in exchange for kickbacks. Compl. ¶¶ 155-57. The complaint alleges that Shearer and Block were located in Chicago. It does not indicate that Shearer was admitted to practice in California, and according to the letter attached to the complaint, Shearer was not admitted *pro hac vice* in California in connection with Plaintiff's divorce appeal. *See* Compl. Ex. B. Block is not a practicing attorney but rather a paralegal in Shearer's office. By consequence, Plaintiff has not established that Shearer or Block were obligated to adhere to the California Rules of Professional Conduct. Plaintiff does not point to any particular primary violation of a specific Illinois Rule of Professional Conduct by Shearer or Block, and it is not the court's responsibility to identify one.[6] Broad generalizations about the duty of confidentiality are not enough absent more details about the nature of that duty and what information Shearer and Block maintained that they were required to keep confidential. Plaintiff must specify in his complaint which Illinois rules Shearer or Block violated, how they violated them, and how Defendants encouraged that violation. Accordingly, the court recommends dismissal of this claim for failing to plead sufficient facts.

## IV. CONCLUSION

For the reasons above, the court finds that the complaint fails to state a claim pursuant to 28 U.S.C. § 1915(e) and recommends that it be dismissed with leave to amend. Plaintiff must file a first amended complaint addressing the deficiencies identified in this order by May 18, 2022.

---

[5] Shearer, now deceased, is not a party to this action.

[6] The court notes that in Plaintiff's letter to Szucsko, he references the California Rules of Professional Conduct only. *See* Compl. Ex. A.

United States District Court
Northern District of California

The Case Management Conference before the undersigned set for May 4, 2022 is vacated.

The Clerk is directed to reassign this case to a district judge. Any party may file objections to this report and recommendation with the district judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Cal. Civ. L.R. 72-2.

The court refers Plaintiff to the section "Representing Yourself" on the Court's website, located at https://cand.uscourts.gov/pro-se-litigants/, as well as the Court's Legal Help Centers for unrepresented parties. Parties may schedule an appointment by calling 415-782-8982 or emailing fedpro@sfbar.org.

**IT IS SO ORDERED.**

Dated: April 18, 2022




Donna M. Ryu
United States Magistrate Judge